UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENZEL SAMONTA RIVERS,

Plaintiff,

v.                                                          Case No. 23-cv-453-pp

KYLE DEMERS, ROBERT J. RYMARKIEWICZ,
THOMAS NELSON, JOHN DOE BANKS, JOHN DOE,
LANA WILSON and RANDALL HEPP,

Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Denzel Samonta Rivers, an individual incarcerated at Milwaukee Secure Detention Facility (MSDF) who is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants were deliberately indifferent to his serious medical condition and retaliated against him. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On April 7, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $33.02. Dkt. No. 5. The court received a payment of $40 on April 28, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.      Screening the Complaint

### A.      Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint concerns events that allegedly occurred while the plaintiff was in Waupun Correctional Institution. Dkt. No. 1 at 1–2. The plaintiff alleges that on October 25, 2021, he was incarcerated in the segregation unit at Waupun and housed next to Dewon Walton. Id. at ¶¶1–3. The plaintiff alleges that defendants Demers, Rymarkiewicz, Nelson and an unknown John Doe officer prepared to extract Walton from his cell. Id. at ¶4. He says the defendants were wearing body cameras, and the John Doe officer had a

3

handheld camera that he used during and after the extraction. Id. at ¶¶5–7. The plaintiff says he yelled out to the defendants that he has asthma and needed to be removed from his cell before the defendants extracted Walton because they were going to use incapacitating agents including "OC-spray" on Walton. Id. at ¶8. He says the defendants were aware that he has asthma and that, according to Waupun records, Walton would require several sprays of the incapacitating agent to comply with orders. Id. at ¶¶9, 23.

The plaintiff says the defendants nonetheless used the incapacitating agent on Walton during the extraction. Id. at ¶10. He says the defendants twice sprayed Walton before turning on the vents, which allowed the spray to enter the plaintiff's cell. Id. at ¶12. The plaintiff again yelled to the defendants that he could not breathe because of the spray and his asthma, and he requested medical attention. Id. at ¶13. He says the defendants did not respond or provide him assistance. Id. at ¶14. At around 2:00 p.m., the plaintiff pressed his emergency call button and asked John/Jane Doe Banks for help, but Banks told him that the health services unit would not see him and ended the call. Id. at ¶15. The plaintiff alleges he experienced shortness of breath, tightness in his chest and other signs of an asthma attack. Id. at ¶16. He pressed his call button again a half hour later, and Banks told him he/she would notify Nelson. Id. at ¶17. He still did not receive medical attention. Id.

The plaintiff alleges that he passed out from the fumes. Id. at ¶20. When he awoke, he kicked his cell door "using the little energy [he] had." Id. A non-defendant officer noticed the plaintiff's kicks, checked on the plaintiff and

called for medical attention. Id. A non-defendant nurse provided the plaintiff medical care later that afternoon to treat his wheezing, and she provided the plaintiff a nebulizer to help him breathe. Id. at ¶21. She noted that the plaintiff had an inhaler in his cell, but that the inhaler was not effective to treat his asthma after he inhaled the OC spray. Id. The plaintiff alleges that the defendants completed an incident report about their use of force on Walton, which noted the plaintiff's exposure to the spray. Id. at ¶24.

The plaintiff alleges that Waupun has a logbook in which staff must report incarcerated persons' requests for emergency medical attention. Id. at ¶18. He says Banks was working at Waupun under a two-week contract from Milwaukee Secure Detention Facility because Waupun was short-staffed. Id. at ¶19. He claims Banks failed to report the plaintiff's requests in the logbook, as Waupun policy requires. Id. at ¶25. On November 1, 2021, the plaintiff filed an institutional complaint about the October 25, 2021 incident, including the defendants' alleged failure to provide him medical attention. Id. He says complaint examiner Lana Wilson rejected his complaint without properly investigating his allegations or speaking to Banks about the plaintiff's requests for treatment. Id. On November 23, 2021, Warden Randall Hepp reviewed the complaint examiner's recommendation to reject the plaintiff's complaint and accepted that decision as appropriate. Id. at ¶26. The plaintiff claims that Wilson and Hepp failed to intervene and investigate his complaint before rejecting it. Id. at ¶27. On October 28, 2021, the plaintiff was transferred to Green Bay Correctional Institution. Id. at ¶28.

The plaintiff claims that the defendants failed to follow Waupun and Department of Corrections policy regarding the use of incapacitating agents on incarcerated persons and providing medical attention and proper clean up after its use. Id. at ¶29. The plaintiff says he had filed previous civil lawsuits against the defendants (except the Doe defendants whose identity he does not know), and he claims that their actions in failing to provide him proper medical treatment was retaliation for him filing the previous lawsuits. Id. at ¶30. He claims the defendants were deliberately indifferent to his asthma when they failed to move him to another cell before using the OC spray on Walton on October 25, 2021. Id. at ¶31. The plaintiff seeks compensatory and punitive damages. Id. at 10.

C.    Analysis

The court reviews the plaintiff's allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm

6

to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that he suffers from asthma and was unable to breath when the defendants used chemical agents on Walton. He alleges that he informed the defendants that he could not breathe and needed medical attention. He says the defendants were aware of his asthma and his need to be removed from his cell before they used the incapacitating agents. The defendants ignored him and disregarded his medical needs and used the incapacitating agents to remove Walton from his cell. The plaintiff says he pressed his emergency call button twice, but both times defendant Banks disregarded his need for immediate medical attention and merely relayed his concern to other prison staff. Accepting the plaintiff's allegations as true, the court finds that the complaint states a viable Eighth Amendment claim against defendants Demers, Rymarkiewicz, Nelson and the Doe defendants for using the incapacitating agent on Walton despite being aware of the plaintiff's asthma and the difficulties he would experience from their use of the agent in the cell next to his and for disregarding his need for medial attention. The court will permit the plaintiff to proceed on this Eighth Amendment claim.

The plaintiff also claims that defendants Demers, Rymarkiewicz and Nelson intentionally disregarded his asthma in retaliation for previous lawsuits he filed against them. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected

activity," "he suffered a deprivation likely to prevent future protected activity," and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783). The filing of previous complaints or lawsuits is protected activity, Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020) (lawsuits); Daugherty, 906 F.3d at 610 (complaints and grievances); and the plaintiff alleges that the defendants ignored him and refused to provide him treatment specifically because he filed the previous lawsuits against them.

The court applies an objective test to determine whether the plaintiff's allegations satisfy the second element: "'whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity.'" Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (quoting Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011)). Because this standard is objective, "a specific plaintiff's persistence does not undermine his claim." Id. (citing Holleman, 951 F.3d at 880). The court finds that ignoring a prisoner's known serious medical issue and denying him medical treatment because he has filed past complaints would likely deter him from continuing to engage in that protected activity. It is not relevant that the plaintiff has continued to file complaints and lawsuits against the defendants. The court will allow the plaintiff to proceed on a First Amendment claim against defendants Demers, Rymarkiewicz and Nelson.

The plaintiff claims that defendants Wilson and Hepp violated his rights by rejecting his institutional complaint about the October 25, 2021 incident

without properly investigating his claims. But there is no inherent constitutional right to a prison grievance system. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). That means prison officials do not violate a prisoner's rights by denying, rejecting or mishandling his "administrative complaint about a completed act of misconduct." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); see Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011). Nor does the plaintiff have a right to an investigation or "meaningful review" of his administrative complaint. Steinke v. Dittmann, No. 17-CV-656-PP, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020) (quotation omitted). The plaintiff does not state a claim against Wilson or Hepp, so the court will dismiss those defendants.

Nor does the plaintiff state a claim that any defendant violated prison or Department of Corrections policy. Section 1983 protects against only constitutional violations, not violations of prison regulations or policies. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). The plaintiff may not proceed on his allegations that the defendants violated prison policy when using the incapacitating spray.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Lana Wilson and Randall Hepp.

9

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Kyle Demers, Robert Rymarkiewicz and Thomas Nelson at Waupun Correctional Institution. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty (60) days.

Because the plaintiff does not know the names of the two John/Jane Doe defendants, he must use discovery to learn their names. Once all named defendants have responded to the plaintiff's complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and for filing dispositive motions. The order also will set a deadline for the plaintiff to identify the Doe defendants and will provide the plaintiff additional information for identifying them. *The plaintiff should not start the process for identifying the Doe defendants until the court has issued the scheduling order.*

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$310** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Milwaukee Secure Detention Facility.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 18th day of July, 2023.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**